UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:                        .     Case No. 1-19-41628 (CEC)
                              .
                              .     271-C Cadman Plaza East
IBK PARTNERS INC.,            .     Brooklyn, NY 11201-1800
                              .
                              .
              Debtor.         .     April 17, 2019
. . . . . . . . . . . . .           4:03 p.m.


HEARING ON [3] NOTICE OF HEARING ON DEFICIENT CHAPTER 11 CASE
 FOR DEBTOR'S FAILURE TO BE REPRESENTED BY COUNSEL, [4] ORDER
SCHEDULING INITIAL CASE MANAGEMENT CONFERENCE, [18] ORDER (1)
SCHEDULING HEARING ON AN EXPEDITED BASIS TO RETAIN COUNSEL TO
   THE DEBTOR AND AUTHORIZE A POST-PETITION RETAINER AND (2)
    GRANTING EXTENSION OF TIME TO FILE SCHEDULES. (RELATED
DOCUMENT(s), [16] APPLICATION TO EMPLOY, [17] MOTION TO EXTEND
                   DEADLINE TO FILE SCHEDULES

              BEFORE HONORABLE CARLA E. CRAIG
        UNITED STATES BANKRUPTCY COURT CHIEF JUDGE


APPEARANCES:

For the Debtor:            Rosen & Kantrow, PLLC
                           By:  AVRUM J. ROSEN, ESQ.
                           38 New Street
                           Huntington, NY 11743

For the U.S. Trustee:      Office of the U.S. Trustee
                           By:  NAZAR KHODOROVSKY, ESQ.
                           U.S. Federal Office Building
                           201 Varick Street, Suite 1006
                           New York NY 10014

Audio Operator:            Juliet Lecky

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609)586-2311   Fax No.   (609)587-3599**

APPEARANCES (Cont'd):

For 195 Saint James          Kriss & Feuerstein LLP
Lender, LLC:                 By:  DANIEL NEIL ZINMAN, ESQ
                             360 Lexington Avenue, Suite 1200
                             New York NY 10017

                      - - -

1          COURT CLERK:  Calling Matters 28 through 30 on the

2    calendar, IBK Partners Inc., hearing on deficient Chapter 11

3    case for debtor's failure to be represented by counsel, case

4    management conference, and the hearing to retain counsel.

5          MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

6    the U.S. Trustee.

7          MR. ROSEN:  Good afternoon, Avrum Rosen of Rosen &

8    Kantrow, proposed counsel for the debtor.

9          MR. ZINMAN:  Good afternoon, Your Honor.  Thank you

10   for taking things out of order.  Daniel Zinman, Kriss &

11   Feuerstein, for 195 Saint James Lender, LLC.

12          MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

13   the U.S. Trustee.  Your Honor, the U.S.T. wanted to note that

14   and respectfully request that the hearing for lack of counsel

15   be marked off since the debtor has now retained counsel.

16          THE COURT:  All right.

17          MR. KHODOROVSKY:  Also, Your Honor, the U.S.T. has

18   uploaded the proposed order regarding the retention of Mr.

19   Rosen's firm.  The U.S.T.'s Office uploaded the proposed order

20   on the 16th, yesterday.  So, I believe those two matters are

21   resolved.

22          THE COURT:  Okay.  So, this case involves a property

23   that was transferred, was it not?

24          MR. ROSEN:  Yes, Your Honor.

25          THE COURT:  From -- and it was transferred from a

1  debtor that was in a bankruptcy before Judge Grossman, correct?

2          MR. ROSEN:  Yes, Your Honor.

3          THE COURT:  Owned by the same person, the same -- in

4  other words the same -- the principal of the transferor?

5          MR. ROSEN:  The principals are not quite the same,

6  but they're related and they're affiliated.

7          THE COURT:  Okay.  Why is this not going immediately

8  back to Judge Grossman?

9          MR. ROSEN:  Your Honor, you know, the only thing I

10 could do under the circumstances here was -- I obviously was

11 not involved in the beginning of it because that's probably the

12 way I would have gone.

13         THE COURT:  But it's a related case, isn't it?

14         MR. ROSEN:  It is a related case, Your Honor.  It's

15 here, so I dealt with it here.  I have an order.  I have --

16         THE COURT:  Okay.

17         MR. ROSEN:  -- cured the deficiencies, and, you know

18 --

19         THE COURT:  My --

20         MR. ROSEN:  -- I think you know that my predilection

21 is to lay it all out what I want to do and where it's going.  I

22 explained to the clients that one of several things could

23 happen and that one of them might be that you would turn around

24 and say --

25         THE COURT:  I didn't -- I actually stopped reading

1  when I stopped at -- when I saw that it was --

2      MR. ROSEN:  Oh, I work so hard on this, Your Honor.

3      THE COURT:  -- it used to be from Judge Grossman.

4      MR. ROSEN:  I spent a weekend on these papers.

5      THE COURT:  I said, well, that solves -- that's as

6  far as I need to read, but --

7      MR. ROSEN:  I mean I tried to lay -- I laid out the

8  entire scenario of what we were going to do in the case and

9  what was going on and what was intended.

10      You know, the only thing I can say to you is, Your

11  Honor, you know, when it was front of Judge Grossman, there

12  were -- and I'm not criticizing at all, if you read -- if you

13  read his decision on the lift stay, it was like a how to on how

14  not to conduct a trial on behalf of who was representing these

15  people.

16      THE COURT:  But -- okay.

17      MR. ROSEN:  But if it's --

18      THE COURT:  It seems to me since he -- especially

19  since he went so far as to write a decision on this, that it is

20  appropriate for him to be the person who -- and we have the

21  same property, same lender, you know, so --

22      MR. ROSEN:  But different -- but, Your Honor, but a

23  very different set of circumstances, and let me just explain it

24  just so you have the whole picture, all right, even though you

25  have my wonderful pleadings, you have the whole picture.

1    What happened here was -- what happened here was the

2 fact that after that case there was a determination as to

3 value.  It's an interesting situation because there was a

4 valuation hearing that was just a disaster, no -- nothing got

5 into evidence, nothing got dealt with.  It was determined that

6 -- it was determined that there was insufficient equity in the

7 property, and there were fights over it.

8    After that, lift stay is granted, the parties enter

9 into new agreements, wait for the case to get dismissed, enter

10 into an agreement that -- to allow them to get the payoffs.

11 They go out and get the mortgagees.  They go out and get --

12 because this is one mortgage spread over two properties.  They

13 couldn't get that kind of mortgage anymore.  They had to get

14 two separate mortgages.

15    So, there's an agreement for them to come up with I

16 think $4.3 million by March 15th.  They come up with the money.

17 They've got the commitments.  They're at the closing.  The

18 problem is that one of the mortgages on the bigger parcel is

19 also taking the second on the other one.

20    What's so interesting about it is even though you had

21 a valuation hearing saying that these properties weren't worth

22 the 4.3 or 4.4 million dollars that they had to do, they were

23 able to go out and get the financing to pull out that much

24 money.  So, the market obviously determined that the properties

25 were worth far more.

1        And then what happened was the lender, who I think

2   entered into this agreement because they got releases, they got

3   all kinds of things, entered into this new agreement, all

4   right, never thinking they were going to close.  And when it

5   came time to close, they refused to show up at the closing and

6   give the payoffs and give the lenders.

7        They came up with the reason that they were going to

8   have to release -- they were both closing on the same day, and

9   they wanted to do simultaneous closings with two different

10  banks, which is pretty much impossible, so they were doing one

11  in the morning and one in the afternoon.

12       They went to the one in the morning.  While they were

13  at the table for the one in the morning where they knew the

14  property was only worth between 1.4 and 1.6, they said, we're

15  not coming unless you give us $2.5 million out of the first

16  closing.  They actually closed the first loan and were sitting

17  there waiting for them to show up with the payoff.  I've

18  attached the HUD.  Everything was done, the checks were

19  written.

20       And so, our allegation here and, again, not for

21  today, but our allegation is here there was a new agreement

22  after that case which was then breached by the lender.  So this

23  case is really not your typical kind of like new debtor

24  syndrome case because we've got a new agreement, we've got a

25  new breach.

1          So, my plan was to commence an adversary proceeding

2  to move for specific performance and damages because they cost

3  a lot of money cancelling those closings, to file a plan to

4  deal with their lien priority issues so that they don't have

5  that problem and to move -- and to close the two loans.  We've

6  still got the mortgage commitments on the two loans.  They're

7  still ready to close.

8          So, the issue is this is a case that could be done in

9  short order, save -- these people have their lungs in this

10  property.  They've been working on it for 20 years.  They got

11  in with hard money lenders, and they've gone through -- if you

12  read the history, it's a nightmare.

13          So I laid it all out before this Court, thinking we

14  could come in I think officially and quickly try and get a

15  resolution to this, get the lender paid the full amount that

16  they agreed -- they had agreed to take in the first instant,

17  protect whatever concerns they had and move the case forward.

18          You know, if it's going to get -- you're the chief

19  judge, if you want to send it back --

20          THE COURT:  I think it --

21          MR. ROSEN:  -- it goes back.

22          THE COURT:  -- it's a --

23          MR. ROSEN:  I just wanted you to understand why --

24          THE COURT:  I think it's a --

25          MR. ROSEN:  -- what happened, why we did it.

1        THE COURT:  -- a related case.  This is the -- since

2   there is -- there is -- what's the -- what was the ownership of

3   the prior -- of the entity, the prior entity?

4        MR. ROSEN:  Two individuals and now the ownership is

5   one of the individual's wives.

6        THE COURT:  I think that's close enough to a related

7   case for my -- it's -- obviously it's the same --

8        MR. ROSEN:  The same property.

9        MR. ZINMAN:  Your Honor, there's --

10       THE COURT:  The same property.  Same property and

11  same peoples whose interests are involved.

12       MR. ROSEN:  Your Honor, if I had filed these cases in

13  the beginning, first of all, I would have never filed without

14  coming to a reason, I would have never filed the first case in

15  CI on a Brooklyn property.  I just wouldn't have done it.  All

16  right.  One of the people lived in Freeport, so the debtor

17  thought he had -- the debtor's attorney thought he had to file

18  it there.  And, secondly, obviously I would have filed it as a

19  related case, if it happened, you know.  But with that, all of

20  that said, I just wanted to make sure the Court understood

21  exactly what was going on here, that it wasn't a bad faith

22  filing and to make the pitch to try to keep it here so we can

23  get it done quickly.

24       THE COURT:  All right.  So, what I will do is, I'm

25  going to give you another conference date which will be a

1  holding date, and I believe that in the interim I will probably

2  issue an order transferring it to Judge Grossman.

3          MR. ROSEN:  Okay.

4          THE COURT:  Yes.  Assuming he's --

5          MR. ROSEN:  Mr. Kantrow won this bet.

6          THE COURT:  Assuming that he's -- assuming he's

7  willing to take it.  So, yes.

8          MR. ZINMAN:  If I may be heard, Your Honor.

9          THE COURT:  Yes.

10          MR. ROSEN:  Thank you, Your Honor.

11          MR. ZINMAN:  Once again, for the record, Daniel

12  Zinman from Kriss & Feuerstein for 195 Saint James Lender, LLC.

13  In terms of the potential transfer, we certainly have no

14  objection.  I had no objection being in front of Your Honor for

15  personal reasons.  I live in New Jersey and Central Islip was a

16  little far, but, you know, I'm -- but -- and I have every

17  confidence in Your Honor, but if Your Honor -- if it's related,

18  we're certainly happy to see it transferred back to Judge

19  Grossman.

20          In terms of what counsel just related, I can't help

21  but feel an incredible feeling of deja vu because these exact

22  same arguments were made by McWolle Development, the debtor's

23  predecessor, in the foreclosure court, which is the proper

24  court in which it should be made.

25          THE COURT:  Foreclosure post dismissal of the prior

1  bankruptcy.

2        MR. ZINMAN:  Correct, Your Honor.  And what happened

3  was my client wasn't --

4        THE COURT:  And these arguments were unavailing --

5        MR. ZINMAN:  No.

6        THE COURT:  -- it sounds like.

7        MR. ZINMAN:  They didn't bother to show up, Your

8  Honor.  Instead they decided to transfer it to a new entity and

9  have that entity file for bankruptcy.

10        THE COURT:  But -- okay.  So how were these -- when

11  were the arguments made?

12        MR. ZINMAN:  The arguments were made -- let me try

13  and trace this.  After the bankruptcy was -- after the stay was

14  lifted, my client determined that they'd rather get a reduced

15  payoff than actually own the properties, so they entered an

16  agreement and they gave the debtor a period of time in which to

17  come up with $4.3 million to pay them off.

18        At some point along the way the debtor -- the

19  debtor's motion to dismiss the case was granted.  I expressed

20  concern to Judge Grossman at the time saying if Your Honor

21  dismisses the case, they'll just refile.  So he added to the

22  dismissal order a provision that McWolle could not file for

23  bankruptcy again for 180 days.

24        The day after that order was entered, state court

25  counsel for McWolle filed a letter with the state court saying

1  that the stipulation that we had entered into for the reduced

2  payoff violated the automatic stay in McWolle's bankruptcy

3  case, notwithstanding the fact that we had a lift stay order

4  and the fact that the case had been dismissed a day earlier.

5        Be that as it may, we decided that -- they asked for

6  more time and my client -- McWolle did, and we said, sure,

7  okay, take some more time.  And to clear up any lingering doubt

8  about the lift stay, we had to reaffirm after the dismissal,

9  bank -- McWolle reaffirmed its obligations.

10        Among the obligations in the reduce payoff agreement

11  was not to transfer the property, in addition not to file any

12  motion seeking a stay of the -- of this foreclosure sale, and

13  they gave -- we gave them until March 15th to come up with the

14  money and the foreclosure sale was scheduled for March 21st.

15        There's nothing in the agreement that requires us to

16  subdivide the 4.3 million by property.  It simply says if you

17  pass 4.3 million, that we'll consider that complete

18  satisfaction and issue release of the mortgages.  The debtor

19  could not come up with that.

20        They asked for if we paid you 1.2 million on one

21  property and then closed the next day on the other, then would

22  that work, and we said, no, because we have two properties and

23  we didn't want to take that kind of risk and that wasn't the

24  agreement.  The agreement contained a no waiver clause.  It

25  contained an --

1          THE COURT:  All right.

2          MR. ZINMAN:  -- integration clause, all the usual

3 things you'd expect to see.  So March 15th comes and goes.

4 They can't seem to close on both properties.  And so instead

5 they filed -- it was a Friday, I think it was the 20 --

6          THE COURT:  Okay.  This --

7          MR. ZINMAN:  -- the 19th or 18th, they filed the

8 motion, their emergency motion.  It was scheduled for hearing

9 the day before the foreclosure sale, March 20th.  Tuesday night

10 we file a response.  Wednesday, the day of the hearing comes,

11 they don't show up.  Instead, they form this new entity,

12 transfer the property into that entity, despite their agreement

13 not to do so.

14          THE COURT:  Yes, I think this is probably enough for

15 me --

16          MR. ZINMAN:  All right.

17          THE COURT:  -- to hear right now, but I appreciate --

18          MR. ROSEN:  Your Honor, I'm happy to save us travel

19 time --

20          THE COURT:  -- that everybody has strong feelings

21 here.

22          MR. ROSEN:  -- save travel time if he wants to keep

23 it in Brooklyn.

24          THE COURT:  I'll speak with Judge Grossman and --

25          MR. ROSEN:  All right.  Your Honor, and just to

1  correct --

2          THE COURT:  -- the two of us will decide what to do

3  --

4          MR. ROSEN:  -- two short things.

5          THE COURT:  -- but I need to give you another date,

6  and you don't need to correct the record.

7          MR. ROSEN:  Okay.

8          THE COURT:  I don't need to hear any record

9  corrections right now.  Okay.  So let's get the -- get a date

10  for you.  It's going to be a June date, so that will give you

11  ample time to file any motion that you need to file, but within

12  the next week or so you'll either see an order transferring it

13  or not.  Okay.  So --

14          MR. ROSEN:  Got it.

15          THE COURT:  -- June, give me a June date.

16          COURT CLERK:  The 19th.

17          THE COURT:  June 19th.  At what time, please?

18          COURT CLERK:  2:30.

19          THE COURT:  At 2:30.

20          MR. KHODOROVSKY:  June 19th at 2:30, Your Honor?

21          THE COURT:  Yes.

22          MR. KHODOROVSKY:  And can Your Honor mark off the

23  hearing regarding lack of counsel?

24          THE COURT:  Will do.  Thank you.

25          MR. KHODOROVSKY:  And retention.

1          MR. ROSEN:  I apologize.  I didn't get the time.

2          MR. KHODOROVSKY:  2:30.

3          COURT CLERK:  2:30.

4          THE COURT:  2:30 p.m.

5          MR. KHODOROVSKY:  Okay.

6          MR. ROSEN:  All right.

7          THE COURT:  And I'll -- we'll sign it.  I can sign

8  this.  That's fine.

9          MR. ROSEN:  Your Honor --

10          THE COURT:  Was there a post-petition retainer?  I

11  guess the U.S. Trustee signed off on that?

12          MR. KHODOROVSKY:  Your Honor, there was indeed a

13  post-petition retainer, but it came from --

14          MR. ROSEN:  No, there's an order for a post-petition

15  retainer.

16          THE COURT:  It came from a third party?

17          MR. KHODOROVSKY:  Yes, Your Honor, and the U.S.

18  Trustee has reviewed the appropriate defense affidavits --

19          THE COURT:  Fine.  I'm going to --

20          MR. KHODOROVSKY:  -- and there were supplement Lar

21  Dan affidavits.

22          THE COURT:  I'm going to sign your retention order.

23          MR. ROSEN:  Thank you, Your Honor.

24          MR. KHODOROVSKY:  Thank you, Your Honor.

25          THE COURT:  Okay.  Thank you.

1        MR. ZINMAN:  Your Honor, I wanted to point out that

2  this hearing is likely to be an evidentiary hearing, and I

3  don't know how that fits in with your calendar, assuming Your

4  Honor were to hear the matter on your calendar.

5        THE COURT:  Mostly these things are not -- are

6  handled by the initial hearing.  It's not an evidentiary

7  hearing, and then we set it down.  I make my own -- we explore

8  what exactly the issues are that need to be tried and set it

9  down for a hearing on another day.

10       MR. ZINMAN:  Thank you, Your Honor.

11       MR. ROSEN:  Thank you, Your Honor.

12       MR. KHODOROVSKY:  Thank you, Your Honor.

13           * * * * *

14           **C E R T I F I C A T I O N**

15       I, COLETTE MEHESKI, court approved transcriber,

16  certify that the foregoing is a correct transcript from the

17  official electronic sound recording of the proceedings in the

18  above-entitled matter, and to the best of my ability.

19

20  /s/ Colette Meheski

21  COLETTE MEHESKI

22  J&J COURT TRANSCRIBERS, INC.        DATE:  May 3, 2019

23

24

25