UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                        Chapter 11

IBK PARTNERS INC.                                             Case No. 8:19-72940-REG

                                                             Hon. Robert E. Grossman
                                Debtor.                      United States Bankruptcy Judge

------------------------------------------------------------x


**REPLY TO DEBTOR'S OPPOSITION TO THE MOTION FOR AN
ORDER GRANTING 195 SAINT JAMES LENDER, LLC RELIEF
FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1),
(d)(2) AND (d)(4) AND WAIVING THE FOURTEEN DAY STAY
IMPOSED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(a)(3)**


**KRISS & FEUERSTEIN LLP**
Daniel N. Zinman, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
Attorneys for 195 Saint James Lender, LLC

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................1

I.   Irrespective of the Debtor's Misleading and False Narrative Blaming the Secured
Creditor for McWolle's Inability to Obtain the $4.3 Million Reduced Payoff in a
Timely Manner, the Debtor's Bankruptcy Filing Remains a Bad Faith Filing with
Intent to Hinder, Delay or Defraud the Secured Creditor..........................................2

II.  The Debtor's Attempt to Blame the Secured Creditor for its Inability to
Obtain the $4.3 Million Timely Is Implausible and Contrary to the Facts.............................7

# TABLE OF AUTHORITIES

**Cases**:

*A.A. v. Bd. of Educ. of the City Sch. Dist. of N.Y.*,
  2016 N.Y. Misc. LEXIS 6172 (Sup. Ct. N.Y Cty. 2016) ........................................................5

*Ashcraft v. Iqbali*, 556 U.S. 662 (2009) .........................................................................................8

*In re 177 Weston Rd., LLC*,
  No. 11-50657, 2011 Bankr. LEXIS 2848 (Bankr. D. Conn. July 22, 2011) ...........................6

*In re Sterling*, 543 B.R. 385 (Bankr. S.D.N.Y. 2015) .....................................................................6

*Knopf v. Meister, Seelig & Fein LLP*, 721 Fed. Appx. 96 (2d Cir. 2018) ................................. 7-8

*Polir Construction, Inc. v. Etingin*,
  297 A.D.2d 509, 747 N.Y.S. 2d 20 (1st Dept. 2002) ...........................................................5

*Quantum Diversified Holdings, Inc. v. Wienheimer (In re Escarent Entities, L.P.)*,
  423 Fed. Appx. 462 (5th Cir. 2011) .......................................................................................11

*Reed v. N.Y. Cmty. Bank (In re Reed)*,
  BAP No. CC-16-1028, 2016 Bankr. LEXIS 4240 (BAP 9th Cir. Dec. 2, 2016) ....................6

**Statutes/Rules**:

11 U.S.C. §§ 105(a) ..........................................................................................................1, 10, 12

11 U.S.C. §§ 362(d)(1) .....................................................................................................1, 10, 12

11 U.S.C. §§ 362(d)(2) .....................................................................................................1, 10, 12

11 U.S.C. §§ 362(d)(4) ........................................................................................................ passim

Bankruptcy Rule 4001(a)(3) ....................................................................................................1, 12

N.Y. DEBT. & CRED. LAW § 273 .............................................................................................. 6-7

N.Y. DEBT. & CRED. LAW § 273-a...............................................................................................7

195 Saint James Lender, LLC (the "<u>Secured Creditor</u>") respectfully submits this Reply to the Opposition (the "<u>Opposition</u>") of the above captioned debtor and debtor-in-possession (the "<u>Debtor</u>") to the Motion (the "<u>Motion</u>") for the entry of an Order granting relief from the automatic stay, for cause, pursuant to 11 U.S.C. §§ 105(a), 362(d)(1), 362(d)(2) and 362(d)(4) (the "<u>Bankruptcy Code</u>"), waiving the fourteen (14) day stay imposed by Federal Rule of Bankruptcy Procedure ("<u>Bankruptcy Rule</u>") 4001(a)(3), and for such other and further relief as the Court deems just and proper.  In support of this Motion, the Secured Creditor respectfully represents as follows:

## ARGUMENT

1.      While the Debtor launches into a long, misleading and false narrative blaming the Secured Creditor for the fact that McWolle failed to deliver the $4.3 million Reduced Payoff Amount,[1] none of that explains why these issues are being brought in this Court.  All of these issues were previously raised in the State Court by McWolle in the Emergency Motion, yet McWolle's counsel did not bother to show up to the hearing on its Emergency Motion, scheduled for the day before the foreclosure sale.  Instead, McWolle formed the Debtor, McWolle transferred the Properties for no consideration to the Debtor, and the Debtor filed this bankruptcy case hours before the scheduled foreclosure sale.  If its claims had any merit, McWolle could have obtained relief in the State Court, but instead, McWolle concocted a scheme to get the issue into this Court, presumably hoping that the resolution of the issue would be delayed for months longer, all while the automatic stay leaves the Debtor in possession of the Properties.  Indeed, the Debtor's principal, and her husband (a principal of McWolle), live in an apartment in the 195 Saint James Property without paying any rent,[2] clearly a situation they would like to see continued.

---

[1] All capitalized terms not defined herein shall have the definitions set forth in the Motion.

[2] The Debtor admits that its principal and her husband (a principal of McWolle) live in an apartment in the 195 Saint

2.      Given these facts, *in rem* relief from the automatic stay under section 364(d)(4) is required. As a result, this Court need not address the Debtor's misleading and false narrative. Even if it were to do so, however, the Debtor's theory is implausible.   The Debtor can offer no logical reason why the Secured Creditor, having obtained relief from stay in the McWolle bankruptcy case, would agree to the Reduced Payment Stipulation, by which the Secured Creditor agreed to accept a payoff in an amount over $600,000 less than it was owed, unless the Secured Creditor did not actually want to own the Properties.  It simply is implausible for the Secured Creditor to sign the stipulation and then immediately undermine it.   Instead, the Debtor, for whatever reason, couldn't obtain the $4.3 million payoff and now blames the Secured Creditor for its own failings.

**I.      Irrespective of the Debtor's Misleading and False Narrative Blaming the Secured Creditor for McWolle's Inability to Obtain the $4.3 Million Reduced Payoff in a Timely Manner, the Debtor's Bankruptcy Filing Remains a <u>Bad Faith Filing with Intent to Hinder, Delay or Defraud the Secured Creditor.</u>**

3.      In the Motion, the Secured Creditor demonstrated that the Debtor filed this case in bad faith and as part of a scheme to hinder, delay or defraud the Secured Creditor, based on, among other facts:  (a) the principals of McWolle created this Debtor; (b) the owner of this Debtor is the wife of one of the principals of McWolle; (c) the principals of McWolle created the Debtor the day before a scheduled foreclosure sale; (d) McWolle transferred the Properties to the Debtor the day the Debtor was created for no consideration; (e) the Reduced Payment Stipulation, signed by McWolle and the Secured Creditor after the Secured Creditor obtained relief from the stay in McWolle's bankruptcy case, barred McWolle from transferring any interest in the Properties; (f)

---

James Property without paying any rent.  (Opposition Brief at ¶ 26).  The Debtor does state that the principal and her husband will pay rent, but do not say when they will start doing so, nor whether any payments will be made for rent owed for the time they lived in the apartment prepetition.  In addition, the amount of rent to be paid is not market rent, but just enough to pay insurance and taxes.  *Id.*  Apparently, there is no intention of making payments on the Note.

McWolle was barred from filing another bankruptcy case for 180 days following the dismissal of its bankruptcy case, making the transfer of the Properties to the Debtor the only way McWolle and its principals could get around this Court's 180 day injunction; (g) McWolle filed a motion by order to show cause in the state court Foreclosure Action raising the same issues raised by the Debtor in its Opposition, which the Court scheduled for a hearing on March 20, the day before the scheduled foreclosure sale; and (h) the Debtor filed this bankruptcy case mere hours before the foreclosure sale in an effort to stop the foreclosure sale automatically via the stay. These facts alone more than justify relief under Section 362(d)(4) of the Bankruptcy Code.

4.    Critically, the Debtor did not dispute <u>any</u> of these facts. Instead, the Debtor raises a host of allegations that distort the truth all in a vain attempt to justify why McWolle was unable to come up with the $4.3 million reduced payment in a timely manner by falsely blaming the Secured Creditor. None of that really matters for purposes of section 362(d)(4), though. This Court specifically barred McWolle from refiling for bankruptcy. McWolle/the Debtor improperly chose to evade this bar by creating the Debtor as a sham and transferring the Properties to the Debtor for no consideration a day before the scheduled foreclosure sale. That alone justifies the relief sought.

5.    The Debtor attempt to blame the Secured Creditor for its own failures and, in a separate complaint, to compel the Secured Creditor to accept $4.3 million in satisfaction of its Mortgage, simply does not matter for purposes of section 362(d)(4). McWolle had an opportunity to, and actually did, pursue the same relief in State Court. McWolle filed the Emergency Motion by order to show cause. The State Court granted that order to show cause, but refused a stay of the foreclosure sale and set the hearing on the Emergency Motion for the day before the sale at

3

9:30 a.m.  *See* Ex. J to the Opposition at 1.  As shown in the Supplemental Affirmation of Daniel N. Zinman in Support of the Motion (the "Zinman Suppl. Affirm.") and the Affirmation of Michael J. Bonneville in Support of the Motion (the "Bonneville Affirm."), both filed concurrently herewith, no one appeared on behalf of McWolle in the State Court at the 9:30 a.m. first call, or up to or through the second call at approximately 11:00 a.m.  Accordingly, the Emergency Motion was marked off the calendar.  (Zinman Suppl. Affirm. at ¶ 3; Bonneville Affirm. at ¶ 6).  McWolle then abandoned its own Emergency Motion to seek the same relief in this Court in violation of the Reduced Payoff Stipulation and despite this Court's injunction barring McWolle from refiling.

6.      The only evidence that the Debtor provides that someone did attend is the self-serving affidavit of McWolle's latest state court counsel, David Broderick.  As stated in the Motion, Mr. Broderick is the counsel who wrote a letter to the State Court in the Foreclosure Action on February 26, 2019, without having previously appeared in the Foreclosure Action or filing a notice of change in counsel, stating that the Reduced Payment Stipulation violated the automatic stay in McWolle's bankruptcy case, without mentioning the Stay Termination Order or the Bankruptcy Dismissal Order, which had been entered, respectively, about two months and a day before the letter was filed.  Be that as it may, Mr. Broderick now rather carefully states that he flew in for the hearing and that "[w]hen [he] appeared in the Court room, [he] was told that the matter had been marked off."  (Opposition, Ex. K).  Notably absent from the statement is what time he appeared in Court.  Mr. Broderick never actually says that he appeared on time.  And, as stated above and in the Zinman and Broderick affidavits, to the extent that Mr. Broderick did go to Court on the day of the hearing on the Emergency Motion, he did not appear until after second

call after 11:00 a.m., over an hour and a half after the scheduled time.[3]  Moreover, at no time did

Mr. Broderick email or call counsel to inform counsel that he was running late.  (Zinman Suppl.

Affirm. at 3; Bonneville Affirm. at 6).  Thus, while the Debtor merely states that for "some reason

the motion had been marked off the calendar," it seems clear what really happened.  Mr. Broderick

missed the hearing entirely, whether intentionally or accidentally, and never reached out to counsel

for the Secured Creditor.  That's why the hearing was marked off the calendar.  Thus, to the extent

that there was a crisis, it was of McWolle's own making.

7.     Regardless, once McWolle understood that it had a problem – presumably

sometime in the early afternoon of March 20, 2019 – it still could have asked the Secured Creditor

for more time or filed an emergency motion for a stay, asking for more time based on law office

failure.  *A.A. v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 2016 N.Y. Misc. LEXIS 6172, *2 (Sup.

Ct. N.Y Cty. 2016) ("Law office failure is a reasonable excuse for vacating, when the default is

based on a single inadvertent mistake and not part of a pattern of dilatory behavior.") (emphasis

added) (citing *Polir Construction, Inc. v. Etingin*, 297 A.D.2d 509, 747 N.Y.S. 2d 20 (1st Dept.

2002)).  The State Court could have scheduled a restored Emergency Motion to the calendar and

stayed the foreclosure sale or scheduled a hearing for the next morning, March 21, 2019, as the

foreclosure sale was not scheduled until the afternoon of March 21.  Instead, McWolle never

sought relief from its counsel's law office failure and instead transferred the Properties to the

Debtor for no consideration and the Debtor filed for bankruptcy.

8.     Why transfer the Properties for no consideration and cause the Debtor to file for

bankruptcy in violation of the Reduced Payment Stipulation and in violation of the spirit, if not

---

[3] It is worth noting that the 9:30 a.m. time was supplied by Mr. Broderick's office, not filled in by the State Court. (Ex. J to the Opposition Brief at 1).

the actual provisions, of the Bankruptcy Dismissal Order?  Clearly, the Debtor is hoping to waste months litigating these issues, all while not paying anything on the Note and while the Debtor's principal (and her husband, a principal of McWolle) is living in an apartment in one of the Properties without a lease and without paying rent.  This is exactly the kind of improper purpose Bankruptcy Code Section 362(d)(4) was intended to address.

9.      The cases cited by the Debtor on this point are unavailing.  First, in one of the cases, the court actually found that *in rem* relief was appropriate, ruling that the debtor's arguments that the secured creditor should not be allowed to foreclose should be resolved in another forum (presumably, the foreclosure action).  *Reed v. N.Y. Cmty. Bank (In re Reed)*, BAP No. CC-16-1028, 2016 Bankr. LEXIS 4240, *13-15 (BAP 9th Cir. Dec. 2, 2016).  The other two cases are easily distinguishable.  *In re 177 Weston Rd., LLC*, No. 11-50657, 2011 Bankr. LEXIS 2848, *2-*3 (Bankr. D. Conn. July 22, 2011), involved only a single bankruptcy filing, not the multiple bankruptcy filings present here, nor did the case involve a prior order of the bankruptcy court forbidding a future bankruptcy, an order which the transfer of the Properties here was made deliberately to evade.  *In re Sterling*, 543 B.R. 385 (Bankr. S.D.N.Y. 2015), actually supports the Motion here.  In that case, the Bankruptcy Court found that *in rem* relief was not appropriate specifically because the transfer of property was not made on the eve of the bankruptcy filing.  *Id.* at *395.  Here, the Bankruptcy filing was made mere hours after the principals of McWolle formed Debtor and transferred the Properties to the Debtor for no consideration.

10.      Further, it is important to note that the Debtor's title in the Property is voidable.  In New York, a conveyance of property is fraudulent if it is made:

> without fair consideration when the person making it is a defendant
> in an action for money damages or a judgment in such an action has

6

> been docketed against him . . . without regard to the actual intent of
> the defendant if, after final judgment for the plaintiff, the defendant
> fails to satisfy the judgment.

N.Y. DEBT. & CRED. LAW § 273-a.  Here, a judgment of foreclosure and sale has been entered

against McWolle, who transferred the Properties for no consideration.  McWolle and the Guarantor

will be liable for any deficiency.  Thus, the transfer is voidable under Section 273-a.  Section 273

provides that a conveyance is avoidable as a fraudulent conveyance if, among other things, the

transferor is insolvent or rendered insolvent and the transfer is for less than fair consideration.

N.Y. DEBT. & CRED. LAW § 273.  Here, the schedules filed in McWolle's bankruptcy case provide

that, other than a small amount of cash, the Properties are McWolle's only assets.  By transferring

the Properties to the Debtor for no consideration, McWolle was rendered insolvent (to the extent

it was not already insolvent).  And, of course, the transfer was for no consideration.  Thus, the

transfer is voidable under Section 273 as well.  Accordingly, whatever title the Debtor has in the

Properties, it will not have that title for long, as its acquisition of title to the Properties is a

fraudulent conveyance and will be voided.  This fact too supports a finding that the Debtor's

bankruptcy filing was part of a scheme to hinder, delay or defraud the Secured Creditor.

Accordingly, the Secured Creditor respectfully submits that this Court should enter an order lifting

the stay under Bankruptcy Code Section 362(d)(4).

## II.    The Debtor's Attempt to Blame the Secured Creditor for its Inability to Obtain the $4.3 Million Timely Is Implausible and Contrary to the Facts.

11.    The main thrust of the Debtor's argument is that McWolle's inability to tender the

$4.3 million payment is the Secured Creditor's fault:  that the Secured Creditor wanted to own the

Property and did not want to accept $4.3 million.  That argument is implausible, and makes no

sense.  *C.f. Knopf v. Meister, Seelig & Fein LLP*, 721 Fed. Appx. 96, 98 (2d Cir. 2018) ("To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (quoting in full *Ashcraft v. Iqbali*, 556 U.S. 662, 678 (2009)).

12.     If the Secured Creditor wanted to own the Properties and/or did not want to accept a reduced payment, why did the Secured Creditor sign the Reduced Payment Stipulation in the first place?  At that point, the Secured Creditor had relief from the stay in McWolle's bankruptcy case and already had a judgment of foreclosure and sale.  All it needed to do was schedule and hold the foreclosure sale.  Instead, the Secured Creditor agreed to a payoff of $4.3 million, when it was owed over $4.9 million.  An agreement to accept such a massive reduction in payment can only have one plausible explanation:  the Secured Creditor did not want to own the Properties and would rather be paid $4.3 million.  Thus, the Secured Creditor wanted the Reduced Payment to be made.

13.     In the face of this obvious problem with its theory, the Debtor alleges that the Secured Creditor received two other benefits because of McWolle's execution of the Reduced Payment Stipulation (and its modification).  (Opposition Brief, ¶ 8).  The alleged "benefits" are illusory and do not justify entering into the Reduced Payment Stipulation.  First, Debtor argues that the Secured Creditor benefitted from a provision in which the Debtor waived any defenses or counterclaims, citing McWolle's allegation that $600,000 of the loan was never funded.  *Id.*  But that argument ignores the fact that there were no defenses or counterclaims, especially as to the alleged underfunding, as:  (a) McWolle waived all defenses in connection with the Forbearance Agreement; (b) the Secured Creditor already had obtained summary judgment; (c) the Secured Creditor already had obtained a judgment of foreclosure and sale and the Lift Stay Order, both of

which fixed the amount of the Secured Creditor's claim. Indeed, this Court already reached

precisely this conclusion in the Memorandum Decision:

> Debtor's counsel asserts . . . that the claimed amount should be reduced . . because approximately $600,000 of the loan was never funded . . . [T]he Debtor does not address the fact that there is a foreclosure judgment, dated March 6, 2018, which determined as of August 19, 2017, that the total amount owed to [the Secured Creditor] was $4,060,047.79. The Debtor did not appeal the foreclosure judgment. That judgment is now final, non-appealable, and *res judicata* as to the amount of the secured debt as of August 19, 2017.

(Memorandum Decision (Ex. F) at 5).

14.     The second alleged benefit cited by the Debtor was that the Debtor agreed that the

foreclosure sale could take place more than 90 days past the entry of the JFS. While that is

technically true, there is no real benefit to the Secured Creditor here. The Secured Creditor had

already filed a motion in the State Court for just such relief, which was heard on February 13,

2019. While the Debtor did agree to consent to that Motion as part of the Reduced Payment

Stipulation, there is no reason to believe that the State Court would not have granted such relief

anyway, even without the Debtor's consent. Indeed, the Debtor does not even suggest a potential

argument it could have advanced in opposition.

15.     It is clear, therefore, that to the extent that there were any benefits to the Secured

Creditor from the Reduced Payment Stipulation, none of them were even remotely worth the over

$600,000 reduction in payment. Accordingly, the idea that the Secured Creditor would voluntarily

execute the Reduced Payment Stipulation while trying to prevent McWolle from coming up with

the Reduced Payment Amount is implausible at best and should be rejected.

16.     Given this conclusion and the fact that the Debtor's allegations do not properly

explain the transfer of the Properties and this bankruptcy filing (as explained in Part I above), it is

not necessary for this Reply to address each of the Debtor's factual allegations in detail.  To the

extent that becomes necessary, the Secured Creditor reserves the right to address such allegations

in detail at the appropriate time.[4]

17.    That having been said, there are a few points which are relevant and important for

this Court to consider.  First, McWolle/the Debtor's theory of what the Reduced Payment

Stipulation meant has evolved over time.  In McWolle's Emergency Motion, McWolle argued that

the Reduced Payment Stipulation, which provided that the Secured Creditor would accept $4.3

million as full satisfaction, required that the Secured Creditor accept $1.2 million for a release of

just the 365 Macon Street Property, with a closing on the 195 Saint James Property allegedly to

occur sometime later.  (Emergency Motion (Ex. M) at 3).   In the face of the Secured Creditor's

strong argument in its Opposition to Emergency Motion (Ex. N) at pages 4 through 9, the Debtor

now ignores this argument and clings to an argument that the Secured Creditor refused to show up

at the alleged closing of McWolle's refinancing.[5]  This is simply not true.  The Debtor ignores the

repeated attempts by the Secured Creditor to determine when and if a closing on a transaction(s)

that would provide the Secured Creditor with the Reduced Payment Amount was to take place

with no response from McWolle.  (Affirm. of Michael Bonneville at ¶¶ 3-5).  Indeed, far from

opposing McWolle's alleged refinancing, counsel to the Secured Creditor, without being asked,

prepared a letter of undertaking and a satisfaction of mortgage to facilitate any closing, and agreed

---

[4] As for the Debtor's arguments concerning the Motion's requested relief under Bankruptcy Code Section 362(d)(1) (other than bad faith) and (2), the Secured Creditor submits that this Court need not, initially, address such issues.  If the Court grants the Motion under Section 364(d)(4), which does not require a valuation of the Properties as is likely under Section 362(d)(1) and (2), the issues raised by the relief sought under Section 362(d)(1) and (2) would be moot.  That said, the Secured Creditor reserves the right to submit evidence and testimony addressing all such issues, should it become necessary.

[5] The Debtor also alleges that the Secured Creditor failed to provide "a payoff".  (Opposition Brief at ¶¶ 13, 15). There was no need for a payoff letter, as the Reduced Payment Stipulation already provided that the Secured Creditor would accept $4.3 million as full satisfaction.

to attend any closing.  *Id.*  Thus, the Debtor's arguments (and the allegations in the complaint against the Secured Creditor that it recently filed) that the Secured Creditor was trying to sabotage McWolle's refinancing efforts are without basis in fact.

18.    Second, the Debtor's arguments in its Opposition Brief and in its complaint against the Secured Creditor ignore a critical fact:  the Debtor does not have standing to enforce the Reduced Payment Stipulation as it was not a party to that stipulation.  Indeed, the Debtor did not even exist when the stipulation was executed.  Further, the Debtor has not submitted any documentation whereby McWolle purports to assign its interests in the Reduced Payment Stipulation to the Debtor.  Even if such documentation does exist and is properly put before this Court, and even if the purported documentation was effective and the Reduced Payment Stipulation allowed for such an assignment, neither the Debtor nor McWolle can enforce the stipulation because they themselves have violated the stipulation.  McWolle, by filing the Emergency Motion and by transferring the Properties to the Debtor, violated the provisions prohibiting just such conduct.  (Reduced Payment Stipulation, § 10).  Furthermore, the time within which McWolle had to pay the $4.3 million has long since come and gone.  The Debtor provides no authority by which this Court can simultaneously enforce an agreement and modify its terms.  Indeed, even assuming the agreement constituted an executory contract, this Court cannot allow the agreement to be assumed and require a modification of its unambiguous terms over the objection of the Secured Creditor.  *Quantum Diversified Holdings, Inc. v. Wienheimer (In re Escarent Entities, L.P.)*, 423 Fed. Appx. 462, 466 (5th Cir. 2011) (C.J. Jones) ("It is well-settled than an executory contract cannot be assumed in part and rejected in part.").  Accordingly, for the foregoing reasons, the Debtor's arguments here and in the complaint are unavailing.

**WHEREFORE**, the Secured Creditor respectfully requests this Court to enter the proposed Order, attached to the Motion as Exhibit 1, granting the Secured Creditor relief from the automatic stay for cause pursuant to 11 U.S.C. §§ 105(a), 362(d)(1), 362(d)(2) and 362(d)(4), waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3), and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       May 14, 2019

                                    KRISS & FEUERSTEIN LLP


                              By:    /s/ Daniel N. Zinman
                                     Daniel N. Zinman, Esq.
                                     360 Lexington Avenue, Suite 1200
                                     New York, New York 10017
                                     (212) 661-2900
                                     (646) 454-4168 - facsimile

                                     *Attorneys for 195 Saint James Lender, LLC*

12